## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

**ComplementSoft, LLC,**

    Plaintiff,

  **v.**

**SAS Institute, Inc.,**

    Defendant.

**Civil Action No. 1:12-cv-7372**

**Magistrate Judge Jeffrey T. Gilbert**

## SAS INSTITUTE'S MOTION TO STAY PENDING *INTER PARTES* REVIEW OF THE PATENT-IN-SUIT AT THE U.S. PATENT & TRADEMARK OFFICE

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INDEX OF EXHIBITS ...................................................................................................... v

I.     BACKGROUND ....................................................................................................... 1

     A.    SAS Has Filed For *Inter Partes* Review Of The '936 Patent In The PTO ........... 1

     B.    Congress Created The IPR Procedure To Provide An Expedited Review Of Patent Validity In The PTO, As An Alternative To District Court Litigation ............................................................................................................... 2

II.    ARGUMENT ............................................................................................................ 4

     A.    The Court Has Discretion To Enter A Stay Pending The *Inter Partes* Review .................................................................................................................... 4

     B.    Numerous Courts Have Entered Stays Pending PTO *Inter Partes* Review .......... 4

     C.    All Three Factors Considered In This District Weigh In Favor Of A Stay ........... 6

          1.    A Stay Will Not Result In Undue Prejudice Or Tactical Disadvantage To ComplementSoft ........................................................ 6

          2.    A Stay Will Likely Simplify The Issues ................................................. 9

          3.    A Stay Will Reduce The Overall Burdens Of Litigation ....................... 12

III.   CONCLUSION ....................................................................................................... 15

## TABLE OF AUTHORITIES

**Page**

**CASES**

*ADC Technology, Inc. v. Kyocera Communications, Inc.*,
    No 1-12-cv-06418 (N.D. Ill. Dec. 13, 2012) ..................................................5, 6

*American Piledriving Equip., Inc. v. Geoquip, Inc.*,
    637 F.3d 1324 (Fed. Cir. 2011) ..................................................14

*Arnouse Digital Devices Corp. v. Motorola Mobility, Inc.*,
    No. 5-11-cv-00155 (D. Vt. Nov. 5, 2012) ..................................................5

*Arrivalstar S.S. v. Canadian Nat'l Ry. Co.*,
    No. 08 C 1086, 2008 WL 2940807 (N.D. Ill. July 25, 2008) .......................... passim

*Bergstrom, Inc., v. Idle Free Systems, Inc.*,
    No.: 12−cv−50254 (N.D. Ill. Mar. 21, 2013)..................................................4, 6

*BOS GmbH & Co. KG v. Macauto USA, Inc.*,
    No. 12-cv-6294 (W.D.N.Y. Dec. 6, 2012)..................................................6

*Capriola Corp., et al. v. LaRose Industries LLC*,
    No. 8-12-cv-02346 (M.D. Fla. Mar. 11, 2013) ..................................................5

*Cascades Computer Innovation, LLC v. SK Hynix, Inc.*,
    No. 11 C 4356, 2012 WL 2086469 (N.D Ill. May 25, 2012) ...............................7, 8, 9, 11, 12

*Clearlamp, LLC v. LKQ Corp.*,
    No. 12-cv-02533 (N.D. Ill. Oct. 18, 2012) ..................................................4, 6

*Clouding IP LLC v. Oracle Corp.*,
    No. 12-cv-00642 (D. Del. Jan. 25, 2013)..................................................6

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*,
    No. 85 C 7565, 1987 WL 6314 (N.D. Ill. Feb. 2, 1987)..................................................9, 12

*Ethicon, Inc. v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1998)..................................................4

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F. 3d 1312 (Fed. Cir. 2009)..................................................15

*Gould v. Control Laser Corp.*,
    705 F.2d 1340 (Fed. Cir. 1983)..................................................4, 11

*GPS Industries, Inc. v. Pro Link Solutions*,
    No. 08 C 4028, 2009 WL 8591841 (N.D. Ill. Feb. 25, 2009)..................................................8, 14

# TABLE OF AUTHORITIES (CONT'D)

Page

CASES

*JAB Distribs., LLC v. London Luxury, LLC,*
No. 09 C 5831, 2010 WL 1882010 (N.D. Ill. May 11, 2010) ........................................ passim

*Marine Polymer Technologies, Inc. v. Hemcon, Inc.,*
672 F.3d 1350 (Fed. Cir. 2012)........................................................................................12

*Network-1 Security Solutions, Inc. v. Alcatel-Lucent USA, Inc., et al,*
No. 6:11-cv-492 (E.D. Tex. Mar. 5, 2013) ........................................................................5

*Phillips v. AWH Corp.,*
415 F. 3d 1303 (Fed. Cir. 2005)......................................................................................14

*Semiconductor Energy Lab. Co. Ltd. v. Chimei Innolux Corp.,*
No. 12-cv-00021, 2012 WL 7170593, at *2 (C.D. Cal. Dec. 19, 2012)........................5, 8, 10

*Tap Pharmaceutical Prods., Inc. v. Atrix Laboratories, Inc.,*
2004 WL 422697 (N.D. Ill. Mar. 3, 2004)......................................................................11, 13

*The Board of Trustees of the University of Illinois v. Micron Technology Inc.,*
No. 2-11-cv-02288 (C.D. Ill. Aug. 24, 2012) ....................................................................5

*VDF Futureceuticals, Inc. v. Sandwich Isles Trading Co. Inc.,*
No. 11-cv-288-ACK-RLP (D. Hawaii Dec. 27, 2011) ......................................................14

STATUTES

35 U.S.C. § 6 ............................................................................................................................2

35 U.S.C. § 313.....................................................................................................................2, 6, 8

35 U.S.C. § 314(a) ...................................................................................................................3

35 U.S.C. § 314(b) .................................................................................................................3, 8

35 U.S.C. § 315(b) ...................................................................................................................4

35 U.S.C. § 315(e)(2).........................................................................................................3, 4, 8, 11

35 U.S.C. § 316(a)(5)................................................................................................................3

35 U.S.C. § 316(a)(8)................................................................................................................6

35 U.S.C. § 316(a)(11)...........................................................................................................3, 4, 8

## TABLE OF AUTHORITIES (CONT'D)

**Page**

35 U.S.C. § 317 ........................................................................................................12

35 U.S.C. § 318(c) ...................................................................................................12

35 U.S.C. § 319 ..........................................................................................................7

**OTHER AUTHORITIES**

37 CFR § 42.107(b) .................................................................................................2, 8

77 Fed. Reg. 7041 (Feb. 10, 2012) ............................................................................3

77 Fed. Reg. 48680 (Aug. 14, 2012)..........................................................................3

77 Fed. Reg. 48756 (Aug. 14, 2012)..........................................................................2

# INDEX OF EXHIBITS

Exhibit A      SAS Petition for *Inter Partes* Review of '936 Patent

Exhibit B      Declaration of Dr. Nick Roussopoulos in support of SAS Petition for *Inter Partes* Review of '936 Patent

Exhibit C      Office Patent Trial Practice Guide, 77 Fed. Reg. 48756 (Aug. 14, 2012)

Exhibit D      Changes to Implement *Inter Partes* Review Proceedings, 77 Fed. Reg. 48680 (Aug. 14, 2012)

Exhibit E      Changes to Implement *Inter Partes* Review Proceedings, 77 Fed. Reg. 7041 (Feb. 10, 2012)

Exhibit F      *Bergstrom, Inc. v. Idle Free Systems, Inc.*, No. 12-cv-50254 (N.D. Ill. Mar. 21, 2013)

Exhibit G      *Clearlamp, LLC v. LKQ Corp.*, No. 12-cv-02533 (N.D. Ill. Oct. 18, 2012)

Exhibit H      *ADC Technology, Inc. v. Kyocera Communications, Inc.*, No. 1-12-cv-06418 (N.D. Ill. Dec. 13, 2012)

Exhibit I      *Capriola Corp., et al. v. LaRose Industries LLC*, No. 8-12-cv-02346 (M.D. Fla. Mar. 11, 2013)

Exhibit J      *Semiconductor Energy Lab. Co. Ltd. v. Chimei Innolux Corp.*, No. 12-cv-00021, 2012 WL 7170593, at *2 (C.D. Cal. Dec. 19, 2012)

Exhibit K      *Network-1 Security Solutions, Inc. v. Alcatel-Lucent USA, Inc., et al.*, No. 6:11-cv-492 (E.D. Tex. Mar. 5, 2013)

Exhibit L      *Arnouse Digital Devices Corp. v. Motorola Mobility, Inc.*, No. 5-11-cv-00155 (D. Vt. Nov. 5, 2012)

Exhibit M      *The Board of Trustees of the University of Illinois v. Micron Technology Inc.*, No. 2-11-cv-02288 (C.D. Ill. Aug 24, 2012)

Exhibit N      *BOS GmbH & Co. KG v. Macauto USA, Inc.*, No. 12-cv-6294 (W.D.N.Y. Dec. 6, 2012)

Exhibit O      *Clouding IP LLC v. Oracle Corp.*, No. 12-cv-00642 (D. Del. Jan. 25, 2013)

Exhibit P      *Arrivalstar S.S. v. Canadian Nat'l Ry. Co.*, No. 08 C 1086, 2008 WL 2940807, at *2 (N.D. Ill. July 25, 2008)

Exhibit Q      *Cascades Computer Innovation, LLC v. SK Hynix, Inc.*, No. 11 C 4356, 2012 WL 2086469, at *2 (N.D. Ill. May 25, 2012)

## INDEX OF EXHIBITS (CONT'D)

Exhibit R    *JAB Distribs., LLC v. London Luxury, LLC*, No. 09 C 5831, 2010 WL 1882010, at *4 (N.D. Ill. May 11, 2010)

Exhibit S    *GPS Industries, Inc. v. Pro Link Solutions*, No. 08 C 4028, 2009 WL 8591841, at *1 (N.D. Ill. Feb. 25, 2009)

Exhibit T    ComplementSoft's LPR 2.2 Initial Infringement Contentions

Exhibit U    Patent Office *Inter Partes* Reexamination Filing Data – June 30, 2012

Exhibit V    *Tap Pharmaceutical Prods., Inc. v. Atrix Laboratories, Inc.*, 2004 WL 422697, at *2 (N.D. Ill. Mar. 3, 2004)

Exhibit W    Declaration of John A. Marlott In Support of SAS Institute's Motion To Stay Pending *Inter Partes* Review of the Patent-In-Suit At the U.S. Patent & Trademark Office

Exhibit X    *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, No. 85 C 7565, 1987 WL 6314, at *2 (N.D. Ill. Feb. 2, 1987)

Exhibit Y    *VDF Futureceuticals, Inc. v. Sandwich Isles Trading Co. Inc.*, No. 11-cv-288-ACK-RLP (D. Hawaii Dec. 27, 2011)

SAS Institute, Inc. ("SAS") asks the Court to stay this infringement litigation while the U.S. Patent and Trademark Office ("PTO") completes an *inter partes* review of the validity of U.S. Pat. No. 7,110,936 ("the '936 patent"), the single patent asserted by ComplementSoft, LLC.

*Inter partes* review (or "IPR") is a new PTO procedure created by Congress as an alternative to district court litigation for resolving patent validity challenges. An IPR is conducted on an accelerated schedule in the PTO before a panel of three technically-trained Administrative Patent Judges. The IPR procedure is tailor-made for the present situation, where the PTO was not aware of certain invalidating prior art patents and publications during the initial examination of ComplementSoft's '936 patent. The PTO is required by statute to decide whether to institute the *inter partes* review of the '936 patent within the next 6 months. And if the PTO institutes the IPR, then the PTO is required by statute to issue a final written decision regarding the validity of the '936 patent with 12 months from the petition grant date.

**In the short time since September 2012 that the *inter partes* review procedure has been available, three patent infringement cases in this District have already been stayed pending IPR proceedings in the PTO. Judges Kennelly, Lefkow, and Kendall (each a designated Patent Pilot Program judge in the Northern District of Illinois) have each exercised their discretion to stay ongoing litigation pending IPR proceedings in the PTO.**

Similarly here, a stay while the PTO makes an expedited review of ComplementSoft's '936 patent makes good sense and will avoid costly duplication of efforts, and each of the three factors considered by Courts in this District weigh in favor of granting a stay here.

## I.      BACKGROUND

### A.      SAS Has Filed For *Inter Partes* Review Of The '936 Patent In The PTO.

On March 29, 2013, SAS filed in the PTO a petition for *inter partes* review of the '936 patent. Ex. A. SAS's IPR petition seeks PTO review of the validity of each and every claim of

the '936 patent. *See id.* p. 10. The IPR petition is based on a number of invalidating prior art references, including three prior art patents and four prior art publications never considered by the PTO during the initial examination of the '936 patent claims. *See id.* pp. 10-12.[1]

In support of the IPR petition, SAS also submitted a supporting declaration from Dr. Nick Roussopoulos, a technical expert with 40 years of experience in the field of software development, computer programming languages, and database management. Ex. B. Dr. Roussopoulos is a Professor in the Computer Science Department and a senior faculty member of the Institute of Advanced Computer Studies at the University of Maryland. *Id.* ¶¶ 4-7.

**B.      Congress Created The IPR Procedure To Provide An Expedited Review Of Patent Validity In The PTO, As An Alternative To District Court Litigation.**

The IPR procedure first became available on September 16, 2012 under the Leahy-Smith America Invents Act ("AIA"), and replaces the predecessor *inter partes* reexamination procedure. An IPR is a new procedure for resolving invalidity challenges on an expedited basis before a panel of three Administrative Patent Judges of the PTO Patent Trial & Appeal Board ("PTAB") having "competent legal knowledge and scientific ability." 35 U.S.C. § 6.

A party starts the IPR process by filing a petition requesting PTO review. *See generally* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756 (Aug. 14, 2012) (Ex. C). The patent owner may file a preliminary response within 3 months of receiving notice of the petition filing date (35 U.S.C. § 313; 37 CFR § 42.107(b)), and the PTO is required by statute to decide whether to grant the petition within 3 months from the patent owner's response (or sooner if no

---

[1] The three prior art patents not previously considered by the PTO are: U.S. Pat. No. 5,572,650 to *Antis et al*; U.S. Pat. No. 5,937,064 to *Eick et al*; and U.S. Pat. No. 5,758,122 to *Corda al*. The four prior art publications not previously considered by the PTO are: "Microsoft Access 97 Visual Basic Step by Step"; "Building Applications with Microsoft Access 97"; "Oracle Programming–A Primer"; and "Oracle8 Programming: A Primer."

response is submitted (35 U.S.C. § 314(b)). So, here, the PTO must decide whether or not to institute the *inter partes* review of ComplementSoft's '936 patent within the next 6 months.

The PTAB will institute an IPR upon a showing that "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). An IPR, when instituted, is an accelerated administrative trial proceeding conducted before the PTO PTAB. The patent owner and petitioner are both given an opportunity to take discovery and to respond to each other's arguments. 35 U.S.C. § 316(a)(5). The statute requires that "the final determination in an *inter partes* review be issued not later than 1 year after the date on which the Director notices the institution of a review," extendible by no more than 6 months for good cause. 35 U.S.C. § 316(a)(11). (According to the PTO: "Extensions of the one-year period are anticipated to be rare." Changes to Implement *Inter Partes* Review Proceedings, 77 Fed. Reg. 48680, 48695 (Aug. 14, 2012) (Ex. D)). Once the PTAB issues a final written decision, the IPR petitioner is estopped in litigation from asserting that the claims subject to the written decision are invalid on any ground that the petitioner raised or reasonably could have raised during the *inter partes* review. 35 U.S.C. § 315(e)(2).

As explained by the PTO, "[t]he purpose of the Leahy-Smith America Invents Act and [the PTO's IPR] regulations is to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." Changes to Implement *Inter Partes* Review Proceedings, 77 Fed. Reg. 7041 (Feb. 10, 2012) (Ex. E). The PTO's express intent in formulating the IPR rules and procedures was "to create a timely, cost-effective alternative to litigation." *Id.*

The statutory scheme for the new IPR procedure minimizes duplicative efforts in several ways. First, a party must seek review within 1 year after it is served with a patent infringement

complaint, ensuring that an IPR will not be tactically timed (or repeated) in an effort to delay or disrupt district court litigation that has progressed significantly towards trial. 35 U.S.C. § 315(b). Second, the PTO is subject to fixed, statutory deadlines requiring resolution of invalidity questions much faster than through the predecessor *inter partes* reexamination procedure. 35 U.S.C. § 316(a)(11). Third, the estoppel provision that takes effect when the PTAB issues its decision ensures there will be no re-litigation of arguments that the petitioner raised or reasonably could have raised during the IPR. 35 U.S.C. § 315(e)(2). The new IPR procedure in the PTO resolves patent validity challenges quickly, and with meaningful estoppel consequences.

## II. ARGUMENT

### A. The Court Has Discretion To Enter A Stay Pending The *Inter Partes* Review.

This Court has the inherent authority to stay this litigation pending PTO review of the validity of the '936 patent. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1998). Whether to stay a case during a parallel PTO proceeding regarding the asserted patent is entrusted to the Court's sound discretion. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983) ("because district courts have broad discretionary powers to control their dockets, stays will not be vacated unless they are immoderate or of an indefinite duration").

### B. Numerous Courts Have Entered Stays Pending PTO *Inter Partes* Review.

In the six months since the new IPR procedure has been available, numerous district courts have stayed litigation pending the PTO's review of the patent-in-suit. **Already, three cases in this District have been stayed pending IPR proceedings in the PTO.** In one case, Judge Kennelly less than 2 weeks ago entered a stay of litigation pending a PTO *inter partes* review. *Bergstrom, Inc., v. Idle Free Systems, Inc.*, No. 12−cv−50254 (N.D. Ill. Mar. 21, 2013) (Ex. F). In a second N.D. Illinois case, Judge Lefkow entered a stay 3 days after the defendant filed an IPR petition. *Clearlamp, LLC v. LKQ Corp.*, No. 12-cv-02533 (N.D. Ill. Oct. 18, 2012)

(entering six-month stay pending PTO decision on IPR petition) (Ex. G).  In a third case, Judge

Kendall entered a stay at the request of the parties pending an IPR to be filed in the PTO.  *ADC*

*Technology, Inc. v. Kyocera Communications, Inc.,* No 1-12-cv-06418 (N.D. Ill. Dec. 13, 2012)

(Ex. H).

Courts in other districts have similarly entered litigation stays pending IPR proceedings,

recognizing the benefits of a stay while the asserted patent undergoes accelerated PTO review.

The court entered a stay pending the PTO's consideration of an IPR petition, for example, in

*Capriola Corp., et. al., v. LaRose Industries LLC.*, explaining that "the statutory arrangement

promises an expeditious response from [the] PTO on whether to conduct *inter partes* review":

> In other words, if the PTO declines *inter partes* review, little time is lost, but if [the] PTO
> grants *inter partes* review, the promise is greater for an important contribution by the
> PTO to resolution of the governing issues in the litigation. . . .  [B]ecause the PTO
> apparently will not consume much time unless the PTO perceives an important patent
> issue within the PTO's particular expertise; and because an important issue that appears
> in the litigation also appears to fall within the PTO's province and particular expertise,
> prudence commends resort to a stay until either the PTO declines review or, finding an
> important issue within the PTO's special province, the PTO grants and completes review
> to the benefit of the parties, the court, and the public. In other words, the investment of
> some time at this juncture appears wise.

No. 8-12-cv-02346 (M.D. Fla. Mar. 11, 2013) (Ex. I).  The court likewise entered a stay pending

the outcome of an IPR in *Semiconductor Energy Lab. Co. Ltd. v. Chimei Innolux Corp.*,

acknowledging that the IPR proceedings were "guaranteed to finally resolve at least some issues

of validity" in light of the statutory estoppel.  No. 12-cv-00021, 2012 WL 7170593, at *2 (C.D.

Cal. Dec. 19, 2012) (Ex. J).  At least three other district court cases have similarly been stayed

pending parallel PTO *inter partes* review proceedings.[2]

---

[2]  *See Network-1 Security Solutions, Inc. v. Alcatel-Lucent USA, Inc., et al*, No. 6:11-cv-492 (E.D. Tex.
Mar. 5, 2013) (stay pending IPR not opposed by patent owner) (Ex. K); *Arnouse Digital Devices Corp. v. Motorola
Mobility, Inc.*, No. 5-11-cv-00155 (D. Vt. Nov. 5, 2012) (stay pending IPR entered at patent owner request) (Ex. L);
*The Board of Trustees of the University of Illinois v. Micron Technology Inc.*, No. 2-11-cv-02288 (C.D. Ill. Aug. 24,

### C. All Three Factors Considered In This District Weigh In Favor Of A Stay.

In deciding whether to stay a case pending a PTO post-issuance review, Courts in this District consider "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Arrivalstar S.S. v. Canadian Nat'l Ry. Co.*, No. 08 C 1086, 2008 WL 2940807, at *2 (N.D. Ill. July 25, 2008) (Ex. P). Considering these three factors, and consistent with the case management approach taken in *Bergstrom*, *Clearlamp* and *ADC*, a stay should be entered here.

### 1. A Stay Will Not Result In Undue Prejudice Or Tactical Disadvantage To ComplementSoft.

For several reasons, a stay will not unduly prejudice ComplementSoft.

**ComplementSoft Will Fully Participate In The IPR.** Because an IPR is an *inter partes* procedure, ComplementSoft will not be prejudiced in its ability to defend itself and the '936 patent. An IPR provides for full participation by a patent owner at all stages of the proceedings in the PTO. This will allow ComplementSoft to file written comments addressing issues raised by the PTO or by SAS. 35 U.S.C. § 316(a)(8). At the outset, for example, ComplementSoft can file a preliminary response to SAS's petition that sets forth reasons the IPR should not be instituted. 35 U.S.C. § 313. If review is instituted, ComplementSoft will have the ability to conduct discovery, including the ability to depose SAS's technical expert witnesses, and to

---

(continued…)

2012) (stay pending filing of IPR petition at joint request of parties) (Ex. M). In one other case, a requested stay was granted-in-part as to deposition discovery while the "request for a complete stay of proceedings [was] denied without prejudice to renew" when the PTO decided the IPR petition. *BOS GmbH & Co. KG v. Macauto USA, Inc.*, No. 12-cv-6294 (W.D.N.Y. Dec. 6, 2012)) (Ex. N). SAS is aware of only one case where a stay was denied outright. *Clouding IP LLC v. Oracle Corp.*, No. 12-cv-00642 (D. Del. Jan. 25, 2013) (oral order denying stay) (docket attached at Ex. O).

submit expert testimony of its own. ComplementSoft may appeal any adverse IPR decision to the PTO directly to the Federal Circuit. 35 U.S.C. § 319.

**This Litigation Is In Its Early Stages.** "Courts frequently issue stays pending [PTO] reexamination when the litigation is at an early stage." *Arrivalstar*, 2008 WL 2940807, at *2. Here, the complaint was just served on January 4, 2013. Dkt. No. 16. The parties have exchanged some initial contentions as required by the Local Patent Rules, and have produced corresponding documents. Marlott Decl. ¶¶ 6, 8, 13, 14 (Ex. W). But fact discovery just opened less than 2 months ago, on February 8, 2013. *Id*. ¶ 7. While the parties served initial interrogatories and document requests during the first full week of March (*id*. ¶¶ 9-10), written responses to those discovery requests are not yet due. No depositions have been noticed or taken. *Id*. ¶ 11. No third party discovery has been served. *Id*. ¶ 12. No substantive motions have been filed. *Id*. ¶ 15. The claim construction process is many months away, with *Markman* briefing not set to begin until October 2013, and the *Markman* hearing set for December 12-13, 2013. *See* Dkt. Nos. 17 at A and 20. Expert discovery is not set to begin until after the Court issues a *Markman* ruling. *Id*. There is no trial date. *Id*.

Courts in this District have routinely granting stays pending PTO post-issuance proceedings where, as here, the litigation is in the early stages. *See, e.g., Cascades Computer Innovation, LLC v. SK Hynix, Inc.*, No. 11 C 4356, 2012 WL 2086469, at *2 (N.D Ill. May 25, 2012) (stay granted where "[t]he parties [had] only exchanged initial disclosures, initial contentions, and first rounds of written discovery") (Ex. Q); *JAB Distribs., LLC v. London Luxury, LLC*, No. 09 C 5831, 2010 WL 1882010, at *4 (N.D. Ill. May 11, 2010) (stay of litigation "in its infancy" where initial contentions had been served under Local Patent Rules but "the parties [had] not answered interrogatories, taken depositions, filed substantive motions,

briefed claim-construction issues, or requested a trial date") (Ex. R); *GPS Industries, Inc. v. Pro Link Solutions*, No. 08 C 4028, 2009 WL 8591841, at *1 (N.D. Ill. Feb. 25, 2009) (stay pending PTO reexamination entered where case was in its "infancy" and "no discovery had taken place and the parties [had] not filed any substantive motions") (Ex. S); *Arrivalstar*, 2008 WL 2940807, at *2 ("Plaintiffs have not cited a case in which a court has denied a request to stay court proceedings pending the PTO's reexamination of the patent-in-suit where the stay request was made during the early stages of the litigation."). Given the early stage of this case, a stay is proper here too.

**A Stay Will Be In Place For A Finite Time.** "Delay in litigation, without more, generally does not demonstrate undue prejudice." *Cascades*, 2012 WL 2086469, at *1. Any litigation delay here will not result in undue prejudice because the stay requested by SAS will be of limited duration. The PTO is statutorily required to decide SAS's IPR petition within the next 6 months. 35 U.S.C. §§ 313, 314(b); 37 CFR § 42.107(b). If the PTO elects not to institute the IPR, then the stay here would be lifted after only 6 months (or less). And if the IPR is instituted, then the PTO must by statute complete the review within 12 months. 35 U.S.C. § 316(a)(11). At that point, moreover, the statutory estoppel provision becomes effective. 35 U.S.C. § 315(e)(2). Because of the speed of the overall IPR procedure, and the resulting estoppel, a stay will not result in undue prejudice here. *See Semiconductor Energy Lab.*, 2012 WL 7170593, at *3 (granting stay and stating that any purported "delay caused by the new IPR procedure is significantly less than the delay caused by the old [*inter partes* reexamination] procedure").

**ComplementSoft's Claim For Money Damages Will Not Be Prejudiced.** Plaintiff does not contend it currently makes or sells any products or services of its own that are covered by the '936 patent. *See* Ex. T (LPR 2.2(h) Initial Infringement Contentions identifying

ComplementSoft products covered by the '936 patent as "none"). ComplementSoft is not a competitor of SAS, and its current business apparently is the enforcement and licensing of the '936 patent. Stays are often granted where, as here, the patent owner will be entitled to recover only monetary damages if infringement is ultimately found, and the patent owner has made no request for preliminary injunctive relief. *See, e.g., JAB Distribs.,* 2010 WL 1882010, at *3 (granting stay pending reexamination and noting that "Plaintiff's claim that it will suffer irreparable harm is undermined by the fact that its complaint seeks monetary damages and does not seek preliminary injunctive relief."); *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, No. 85 C 7565, 1987 WL 6314, at *2 (N.D. Ill. Feb. 2, 1987) (rejecting "plaintiff's argument that monetary damage will not compensate for its losses" and granting stay where "this *is* a suit for money damages and plaintiff has never sought preliminary injunctive relief from the Court") (Ex. X). If any of the '936 patent claims are ultimately confirmed as patentable by the PTO in the IPR, then ComplementSoft will suffer no prejudice from a stay because it can be fully compensated with money damages, plus any appropriate interest that may have accrued during the stay. *Cascades*, 2012 WL 2086469, at *1 ("If [the patent owner] ultimately prevails, it will be able to collect damages that accumulate during the stay, including interest, ameliorating the delay caused by the stay."); *Arrivalstar*, 2008 WL 2940807, at *2 (patent owners "do not appear to be at risk of suffering any pecuniary prejudice, because interest will accrue in their favor if they are determined to be entitled to monetary relief") (internal quotations omitted).

### 2.     A Stay Will Likely Simplify The Issues.

A stay will likely simplify the issues in multiple ways.

### The PTO Will Review The Validity Of Every Claim Of The '936 Patent In The IPR.

ComplementSoft asserts claims 1-3 and 5-16 of the '936 patent against SAS. *See* Ex. T at p. 1. SAS asserts in its IPR petition that **all** 16 claims of the '936 patent are invalid. *See* Ex. A at pp.

10-12.  Because all of the claims currently asserted in this litigation (and all claims that **could be**

**asserted**) may be found invalid during the IPR, thereby eliminating the litigation before this

Court in its entirety, a stay pending the IPR makes good sense.  *See JAB Distribs.*, 2010 WL

1882010, at *4 (PTO review "will evaluate all claims of the patent-in-suit and may therefore

simplify the issues in this case").

**There Is A High Probability That One Or More Of The '936 Patent Claims Will Be**

**Cancelled Or Amended As A Result Of The IPR.**  Even if not all claims of the '936 patent are

cancelled, it is highly likely that one or more claims will be cancelled or amended as a result of

the IPR.  While no statistics are yet available for the new PTO *inter partes* review procedure,

which just became available in September 2012, the most recent statistics published by the PTO

indicate that the predecessor *inter partes* reexamination procedure resulted in full cancellation of

claims or amendment of the claims nearly 90% of the time.  According to the PTO, all claims

were canceled or disclaimed in 42% of cases, at least some claims were amended in 47% of the

cases, and the PTO confirmed all claims in only 11% if the cases.  *See* Ex. U.  There is no reason

to believe the statistics for *inter partes* review will be any different.  Indeed, there is only a

higher likelihood that issues will be simplified here by the IPR, given the standard applied by the

PTO to grant an IPR ("reasonable likelihood of success") is higher than the previous standard for

*inter partes* reexaminations ("significant new question of patentability").  *See Semiconductor*

*Energy Lab. Co.*, 2012 WL 7170593, at *3 ("[T]he amended standards for granting *inter partes*

review probably results in an even higher likelihood than under the prior standard that the issues

in this action will be simplified by the reexamination.").

**The Statutory Estoppel Resulting From The IPR Will Simplify The Invalidity Issues**

**In The Litigation.**  The potential outcomes of the IPR are that: (1) the claims will be invalidated

and cancelled; (2) the claims will be amended; or (3) the claims will be confirmed as patentable. Either of the first two outcomes will reduce the number of patent claims at issue and will limit the potential damages recoverable by ComplementSoft. All outcomes will simplify the invalidity issues because SAS will be estopped from re-litigating in this Court the same invalidity issues that it raised or reasonably could have raised in the IPR. 35 U.S.C. § 315(e)(2).

**The Court And The Parties Will Benefit From The Expert View Of The PTO.** Even if every claim of the '936 patent survives the IPR unchanged, the Court and the parties will benefit from the expert review by three PTO Administrative Patent Judges of the '936 patent claims and the prior art. *See Gould*, 705 F.3d at 1342 ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)."); *Cascades*, 2012 WL 2086469, at *2 (N.D Ill. May 25, 2012) ("Although it is not certain that the PTO will invalidate or amend the claim, at the least the PTO's analysis of the prior art will simplify or facilitate resolution of this case."); *Arrivalstar*, 2008 WL 2940807, at *2 ("[T]he PTO's expert analysis of prior art may simplify and/or facilitate resolution of the case whether or not [the accused infringer] ultimately succeeds in persuading the PTO to amend or invalidate some or all of the claims or patents at issue."); *Tap Pharmaceutical Prods., Inc. v. Atrix Laboratories, Inc.*, 2004 WL 422697, at *2 (N.D. Ill. Mar. 3, 2004) ("A stay will allow both the parties to take advantage of the PTO's expert analysis of prior art and may limit or narrow the remaining issues.") (Ex. V). Even if the PTO confirms the claims without amendment, the PTO's findings will be helpful to the Court when determining the scope of the '936 patent and whether it covers the allegedly-infringing SAS software.

**The IPR May Lead To Settlement.** A stay of the litigation while the IPR proceeds in the PTO may enhance the likelihood of settlement. *See Cascades*, 2012 WL 2086469, at *2 ("The parties' exchange of information with the PTO may also narrow the relevant issues and facilitate early resolution of the case."); *Emhart*, 1987 WL 6314, at *2 ("The outcome of the reexamination may encourage a settlement without the further use of the Court."). If, for example, ComplementSoft is forced to amend the claims during the IPR, then no past damages will be recoverable for those amended claims before completing the PTO proceeding, and the settlement posture will have changed considerably. *See* 35 U.S.C. § 318(c) and *Marine Polymer Technologies, Inc. v. Hemcon, Inc.*, 672 F.3d 1350, 1360-65 (Fed. Cir. 2012) (intervening rights preclude damages for claims amended during PTO post-issuance proceedings). Also, importantly, unlike the predecessor *inter partes* reexamination procedure, the parties may settle an IPR in the PTO without Court intervention if they reach a resolution. *See* 35 U.S.C. § 317.

### 3. A Stay Will Reduce The Overall Burdens Of Litigation.

Just as courts have recognized the value of a stay pending a PTO reexamination[3], a stay pending the *inter partes* review of the '936 patent may have numerous benefits and may reduce the litigation burden on the Court and the parties in several significant ways.

**Because The IPR May Entirely End The Litigation, Or May Result In Amended Patent Claims, A Stay Will Ensure That Only Truly Meaningful Issues Are Litigated.** If **all** of the '936 patent claims are cancelled in the IPR while the case is stayed, then the Court and parties will have avoided the cost and burden of unnecessary litigation. If the case is stayed and

---

[3] *See, e.g., JAB Distribs.*, 2010 WL 1882010, at *2 ("Staying proceedings pending the resolution of a patent reexamination may have numerous benefits, including streamlining the case, simplifying or eliminating remaining issues, promoting settlement, alleviating discovery problems, providing the Court with the PTO's expert review of prior art, and reducing the length and expense of litigation."); *Emhart*, 1987 WL 6314, at *2 (listing at least seven potential benefits of litigation stay pending PTO reexamination).

the PTO finds that even **some** currently-asserted '936 patent claims are invalid or must be amended, then the Court and parties will have avoided wasting resources addressing invalid claims or claims that have been changed.

If the case is not stayed, however, "there is a substantial risk of expending substantial resources on trying the validity of patent claims that may ultimately be cancelled or amended by the PTO." *Tap Pharmaceutical*, 2004 WL 422697, at *2. The parties are poised to begin fact discovery in earnest, leading up to a claim construction hearing in December 2013. It would be a waste of valuable judicial and party resources to conduct parallel proceedings before this Court and the PTO for the rest of this calendar year and beyond, only to have the work of the Court and the parties undone by claim cancellations and/or amendments that are statistically near certain to occur. *See Arrivalstar*, 2008 WL 2940807, at *3 (given the frequency with which PTO invalidates patent claims upon reexamination, there is "a very real possibility that, if this litigation proceeds in tandem with the PTO reexamination proceedings, the parties will have wasted their resources litigating issues that ultimately may be mooted by the PTO's findings"); *JAB Distribs.,* 2010 WL 1882010, at *5 (quoting *Arrivalstar* and concluding: "It would be unwise to welcome that possibility."); *Tap Pharmaceutical*, 2004 WL 422697, at *1 (recognizing "a very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings").

**A Stay Will Avoid The Burden Of Potentially Having To Repeat The Patent Claim Construction Process When The IPR Record Is Complete.** During the IPR, ComplementSoft may make representations and admissions regarding the scope of the '936 patent claims to attempt to distinguish the claimed invention from the prior art. These statements in the IPR form part of the still-developing intrinsic record of the '936 patent (the back-and-forth "prosecution

history" in the PTO) that the Court must consider when it construes the claim language.  *See*

*Phillips v. AWH Corp.*, 415 F. 3d 1303, 1314–19 (Fed. Cir. 2005) (intrinsic evidence includes the

claims, the specification, and the prosecution history, which comprises the complete record of

the proceedings before the PTO); *American Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d

1324, 1336 (Fed. Cir. 2011) (statements made during PTO reexamination inform the proper

construction of a claim term).  If claim construction is addressed before the PTO's review of the

'936 patent claims and ComplementSoft's arguments is complete, and before the claims (if they

even survive) are final, that process will likely need to be repeated or revisited after the

conclusion of the IPR.  *See, e.g.*, *VDF Futureceuticals, Inc. v. Sandwich Isles Trading Co. Inc.*,

No. 11-cv-288-ACK-RLP (D. Hawaii Dec. 27, 2011) ("The Court particularly notes that some or

all of the Court's determinations at the scheduled *Markman* hearing in May could be undermined

by the PTO's reexamination, forcing the Court to hold a second *Markman* hearing to address

new versions of the claims.") (Ex. Y).  A stay pending completion of the IPR would avoid

imposing this unnecessary burden on the Court and the parties, and the claim construction issues

should not be litigated until the evolving intrinsic record in the PTO is complete.

  **This Litigation Should Be Stayed In Its Entirety.**  Not only should the Court defer the

claim construction process until the PTO completes the *inter partes* review of the '936 patent,

but the case should be stayed in its entirety pending the outcome of the IPR.  The stay should

extend to all issues, including the infringement issues.  As Judge Kendall held in rejecting a

patent owner's request to "allow its infringement claims to go forward while the PTO considers

the claims relating to the validity of the patents" in a reexamination, "the most logical approach

is to first determine if the patents-in-suit are valid before this Court determines if they were

infringed because the Defendants cannot possibly infringe an invalid patent." *GPS Industries*,

2009 WL 8591841, at *1; *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F. 3d 1312, 1320 (Fed. Cir. 2009) ("invalid claim[s] cannot give rise to liability for infringement"). Similarly here, the soundest approach is to stay the case in its entirety until the PTO determines if any of the '936 patent claims are valid, rather than to require the parties to conduct a "two-front battle." *Arrivalstar*, 2008 WL 2940807, at *2 ("In the Court's view, it makes more sense to concentrate on proceedings before the subject matter experts than to require the parties to fight a two-front battle before both the PTO and the Court at this time.").

## III.    CONCLUSION

This case exemplifies why Congress created the *inter partes* review procedure, so the validity of disputed patents could be determined on an expedited basis in the PTO, rather than through costly parallel litigation in district court. If the stay is granted, the IPR proceedings in the PTO will streamline the validity portion of the case, simplifying (if not eliminating) the issues for trial and conserving judicial resources, in a case in which the parties are not competitors, there is only money at stake, and the litigation is in its early stages. SAS respectfully requests that the Court stay this litigation in its entirety pending the outcome of the *inter partes* review of ComplementSoft's '936 patent.

Dated:  April 3, 2013                            Respectfully submitted,

                                                s/ John A. Marlott
                                                John A. Marlott (IL 06230613)
                                                jamarlott@JonesDay.com
                                                Thomas W. Ritchie (IL 06301954)
                                                twritchie@jonesday.com
                                                JONES DAY
                                                77 West Wacker Drive, Suite 3500
                                                Chicago, IL  60601.1692
                                                Telephone:    1.312.782.3939
                                                Facsimile:    1.312.782.8585

                                                Counsel for Defendant
                                                *SAS INSTITUTE, INC.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 3, 2013, I electronically filed a copy of the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.


/s/ John A. Marlott
John A. Marlott