UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

---------------------------------------------------------------X
                                                                                                                                                     :

COMPLEMENTSOFT, LLC,                                    :

        Plaintiff, Counterclaim Defendant :
        *-v-*                                             :         Case Number. 12-C-7372

SAS INSTITUTE INC.,                              :         Magistrate Judge Jeffrey Gilbert

        Defendant, Counterclaim Plaintiff :

---------------------------------------------------------------X

**COMPLEMENTSOFT'S OPPOSITION TO SAS INSTITUTE'S MOTION TO STAY PENDING *INTER PARTES* REVIEW OF THE PATENT-IN-SUIT**

Plaintiff ComplementSoft, LLC ("ComplementSoft") opposes, in part, defendant SAS Institute Inc.'s ("SAS Institute") motion to stay the proceedings. ComplementSoft agrees to a stay of the proceedings in view of the *Inter Partes* Review ("IPR") request on the patent-in-suit, U.S. Patent No. 7,110,936 (the "'936 Patent"). However, prior to staying the case ComplementSoft requests the Court to: (1) require completion of all past due discovery; and (2) permit service and completion of e-mail discovery on any non-privileged evaluation of the patent-in-suit and on SAS Institute's evaluation of a commercial embodiment of a substantial portion of the claimed invention that was marketed by ComplementSoft. This discovery is necessary to create a level playing field and to streamline the IPR process.

Both parties served document requests and interrogatories, with responses for both parties due on April 8, 2013. ComplementSoft responded and produced all responsive documents. While SAS Institute responded to the requests, it has neither produced documents nor responded to ComplementSoft's request for when such documents would be produced. Moreover, a number of

the document requests, and the requested additional e-mail discovery, relate directly to the factors used in evaluating patentability and should be permitted to take place as a matter of economy for ComplementSoft and the U.S. Patent Trial and Appeal Board (the "Board"), and as a matter of fundamental fairness.

ComplementSoft seeks to move this case forward quickly and judiciously. For this reason, ComplementSoft's consent to stay discovery is only to permit the Board to make a determination of the patentability of <u>all</u> of the asserted claims. Thus, ComplementSoft does not agree to a stay in the event that the Board fails to grant the IPR request for all pending claims. Similarly, ComplementSoft does not agree to the stay for the time period after the Board renders a final decision, that is, during any appeal from the Board's decision. While a Board decision statutorily must occur within one year of initiation of the IPR, subject to a possible additional six months, appeals may take several years. Such events can add substantial delay to resolution of this dispute.

## ARGUMENT

**I. SAS Institute is Currently Obligated to Respond to ComplementSoft's Discovery Requests**

Discovery in this case has been open since February 8, 2013. During that time, both parties served and responded to written discovery requests, but SAS Institute has failed to produce responsive documents. It is appropriate for the Court to require completion of any outstanding discovery prior to staying the action.

On March 7, 2013, SAS institute served on ComplementSoft ten (10) interrogatory requests and ninety one (91) requests for production. Likewise, ComplementSoft served twenty two (22) interrogatory requests and eighteen (18) requests for production. On April 1, 2013, SAS

Institute asked ComplementSoft to stay discovery pending the outcome of this motion. The next day, ComplementSoft declined such offer. *See* 4/2/13 Hanft to Marlott Email (Exh.A).[1] Both parties responded to the discovery on April 8, 2013. On that same day, ComplementSoft asked whether counsel for SAS Institute wanted to inspect ComplementSoft's responsive documents or just to provide a copy of all of such documents. *See* 4/8/13 Hanft to Marlott Email (Exh. B). Not receiving a response, ComplementSoft produced its responsive documents on April 16, 2013 and inquired as to when SAS Institute would be producing responsive documents of their own. *See* 4/16/ 2013 Hanft to Marlott Letter (Exh. C). No response has been received to date.

Knowing that it would file the IPR request and seek to stay the case, SAS Institute could have requested the Court at the status hearing on March 14, 2013 to stay discovery to permit the Court to make a decision on this motion. It chose not to. It could have made the request on April 2, 2013 after the denial of its request by ComplementSoft. Again, it chose not to. SAS Institute should be held to its discovery obligations now that responsive documents are past due. This is especially the case given that ComplementSoft produced its responsive documents, creating an un-level playing field were the court to deny ComplementSoft's request.

II.  **The Outstanding Discovery is Relevant Even If the Case is Stayed Pending the Board's Completion of the IPR Proceedings**

ComplementSoft's written discovery requests seek SAS Institute documents that relate to the '936 patent, evaluation of ComplementSoft's product, prior art searches, operation of the accused products, marketing of the accused products, non-customer licenses relating to the accused products, cost and profits for the accused products, summary documents providing licensing fees received from customers and a copy of the customer licenses. *See* 4/8/13 SAS

---

[1] The exhibits to this motion are attached to the accompanying Declaration of James Hanft in Support of ComplementSoft's Opposition to SAS Institute's Motion to Stay.

Institute Responses to ComplementSoft's First Set of Requests for Production (Exh. D).[2] Several of these categories of documents are relevant to the potential IPR proceedings and the ultimate resolution of this action.

Any non-privileged documents by SAS Institute relating to the validity of the '936 Patent, construction of the claims of the '936 Patent or prior art to the '936 Patent should be *per se* relevant to the IPR proceedings. *See Id*. Request No. 1 (requesting "All documents relating to the '936 Patent"). SAS Institute will be an active participant in any potential IPR proceedings, such that any internal positions or statements by SAS Institute go directly to the credibility of SAS Institute and its expert who submitted a declaration in the IPR request.

ComplementSoft also requested documents relating to SAS Institute's evaluation of ComplementSoft's own product that embodies a subset of the claimed invention. This information is relevant to the non-obviousness of the invention, an issue that SAS Institute is challenging in the IPR proceedings.

SAS Institute asserts that the claims of the '936 Patent are invalid as obvious over the combination of several prior art references. *See* IPR Request, Docket Entry No. 38, Exh. A, at 31, 41-57. Obviousness is a question of law based on underlying factual inquiries. *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966). The factual inquiries enunciated by the Court are as follows:

    (A) Determining the scope and content of the prior art;
    (B) Ascertaining the differences between the claimed invention and the prior art; and

---

[2] SAS Institute objected to but did not respond to Requests 5, 13, 16 and 20 with a statement that it would be producing responsive documents. SAS Institute also did not substantively respond to several interrogatories. Although premature to assert, it is possible that there may be a discovery dispute requiring court intervention.

(C) Resolving the level of ordinary skill in the pertinent art.

*Id.* Consideration must also be given to "objective evidence of non-obviousness." *Id.* at 17-18, 148 USPQ at 467. Such evidence, sometimes referred to as "secondary considerations," may include evidence of commercial success, long-felt but unsolved needs, copying and failure of others. *See KSR Intern. Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1734 (2007); *Ruiz v. A.B. Chance Company*, 234 F.3d 654, 662-63 (Fed. Cir. 2000).

Here, SAS Institute's evaluation of ComplementSoft's commercial product is relevant to three of these factors: the differences between the claimed invention and the prior art, long-felt but unsolved needs and copying.

In 2001, ComplementSoft developed a software development tool that was marketed as "ASAP." The software contained a document manager, editor, parser and a visualizer. Essentially, the software permitted a user to enter source code written in SAS and show any edits in the source code graphically in the visualizer. The only feature not found in ComplementSoft's ASAP that is a required limitation of the claims of the '936 Patent is that "edits made to the graphical representations of flows in the visualizer are automatically reflected in the source code displayed by the editor." In other words, ASAP only reflected changes one way (from the editor to the visualizer), while the claims of the '936 Patent require two way change reflection (from the editor to visualizer and from the visualizer to the editor). Thus, any evidence of differences between ASAP and the prior art, long-felt but unsolved needs for the concepts embodied in ASAP and/or copying of ASAP would apply equally to the invention claimed in the '936 Patent because ASAP is essentially a subset of the claimed invention.

The documents from ComplementSoft's files show that SAS Institute evaluated the technology in the ASAP product several times over a period of at least five years. SAS Institute

first evaluated ComplementSoft's ASAP in 2001, stating that "[w]e are encouraged by the prospects this software utility has in terms of aiding all levels of SAS users, making easier for them to write, visualize, debug and process code. We are also encouraged by WWM's position that this is not at all competitive with Enterprise Guide." *See* 1/17/01 Raimondi Email (Exh. E). Several months later, in declining to partner with ComplementSoft, Mr. Raimondi stated that "Jim [Metcalf] profiled a number of folks in WWM regarding ComplementSoft's business case, for both becoming an alliance member, and/or working sales through Books By Users" and further stated that "WWM has determined that ComplementSoft's technology is not consistent with SAS's product development and marketing strategy." *See* 11/13/01 Raimondi Email (Exh. F). In 2002, SAS Institute again entered into discussions with ComplementSoft about entering into a partnership, resulting in an executed finder's agreement. *See* 10/24/02 Finder's Agreement (Exh. G). The Finder's Agreement was terminated by SAS Institute soon after execution. Discussions and evaluation of ComplementSoft's ASAP by two SAS Institute teams occurred again in 2006. *See* 3/17/07 ComplementSoft Company Report, at 1. Moreover, SAS had copies of ASAP that it used internally in the early 2000s and had renewed a license for ASAP up until 2009.

These events show that SAS Institute evaluated ComplementSoft's ASAP several times and made a technical assessment of the product against its own product lines. SAS Institute's internal documentation may provide direct evidence of the knowledge of persons of skill in the art (SAS's own software engineers and designers) about the state of the art, the desire by customers for a product with the claimed feature and potentially the copying of the functionality by SAS Institute into its own Enterprise Guide product. This evidence is directly relevant to an evaluation of the secondary considerations of non-obviousness.

The *Inter Partes* Review procedures do permit limited discovery, but it must be requested from and justified to the Board. Even assuming that the Board grants the IPR, the timing and extent of discovery in that proceeding is a matter of pure speculation. If ComplementSoft attains little or no discovery in the IPR proceeding and the IPR is decided adversely, ComplementSoft's position on appeal would be adversely and unfairly prejudiced – certainly not the correct result. In contrast, allowing completion of limited discovery will not only enable ComplementSoft to properly and fully defend the *Inter Partes* Review proceedings, but will also shorten the time and conserve Patent Office resources by mooting the request for production and justification of the request to the Board. It will enable the Board to exercise its substantive patent law expertise, rather than resolve discovery shortfalls that existed before the staying of the court case.

Finally, another category of documents for which discovery should be completed are those relating to damages. The parties engaged in settlement negotiations prior to service of the Complaint and as part of the Planning Report submitted to the Court. However, SAS Institute refused to voluntarily share any information with ComplementSoft relating to the licensing of the accused products. While the parties have since exchanged substantive information relating to liability issues, specifically initial infringement and invalidity contentions, SAS Institute still has provided no information relating to potential damages calculations. This information is necessary for ComplementSoft to fully evaluate all aspects of this case for settlement purposes. ComplementSoft has requested documents that *summarize* the number of licensees world-wide, the number of authorized users under each license, and the fees or costs charged for each such license. *See* Request for Production Nos. 17 to 19. Presumably, this is not a burdensome request for a data analytics company such as SAS Institute.

**III.     The Court Should Permit Email Discovery to Be Completed Prior to Staying the Action.**

ComplementSoft requests that the Court also permit email discovery to be served and responded to for any evaluation by SAS Institute of the '936 Patent and any evaluation by SAS Institute of ASAP.

The ESI Rules in the Northern District of Illinois, which apply in this case, require separate requests for emails. *See* LPR ESI 2.6(a). These requests have not yet been served for practical reasons -- ComplementSoft is waiting for production of the documents in response to its first set of document requests to formulate the precise search terms and custodial records for searching. This phasing of e-mail discovery is contemplated by the Local Patent Rules for Electronically Stored Information. *See* LPR ESI 2.6(b) ("Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances.").

For a software company such as SAS, there is a very high likelihood that any relevant and responsive documents will be in the form of emails. Thus, permitting this discovery to be completed prior to staying the action is very important.

**CONCLUSION**

For the foregoing reasons, ComplementSoft requests entry of an order by the Court staying the action pending completion of pending written discovery and additional e-mail discovery.

8

Dated: April 17, 2013        By:    s/ James E. Hanft

James E. Hanft
SCHIFF HARDIN LLP
666 Fifth Avenue
17th Floor
New York, NY 10103
Telephone: (212) 753-5000
Facsimile: (212) 753-5044

Jason G. Harp
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 6600
Chicago, IL 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600

Stephen M. Hankins
George C. Yu
SCHIFF HARDIN LLP
One Market
Spear Street Tower 3200
San Francisco, CA 94105
Telephone: (415) 901-8756
Facsimile: (415) 901-8701

ATTORNEYS FOR PLAINTIFF AND
COUNDERCLAIM DEFENDANT
COMPLEMENTSOFT, LLC

...

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2013, I electronically filed a copy of the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

By: s/ James E. Hanft

42053-0000

NY\51399816.1