IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ComplementSoft, LLC,** | |
| Plaintiff, | Civil Action No. 1:12-cv-7372 |
| v. | Magistrate Judge Jeffrey T. Gilbert |
| **SAS Institute, Inc.,** | |
| Defendant. | |

**SAS INSTITUTE'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO STAY PENDING *INTER PARTES* REVIEW
OF THE PATENT-IN-SUIT AT THE U.S. PATENT & TRADEMARK OFFICE**

The Court should stay this case in its entirety pending the outcome of the *inter partes* review ("IPR") of ComplementSoft's '936 patent by the PTO Patent Trial & Appeal Board ("PTAB" or "PTO Board"). As numerous other courts in this District and around the country have rightly concluded, and as ComplementSoft does not meaningfully contest, a stay of this litigation while a panel of three technically-trained PTO Administrative Patent Judges conduct an expedited review of the validity of the ComplementSoft '936 patent makes good sense and will conserve both judicial and party resources.

ComplementSoft's request to proceed "full speed ahead" with comprehensive fact discovery in this Court while the IPR proceeds in parallel in the PTO should be rejected. Because ComplementSoft can obtain discovery relating to the validity of the '936 patent as part of the IPR trial proceeding in the PTO, ComplementSoft's demand that SAS search for and produce scores of further documents – in addition to the 75,000-plus pages already produced by SAS – on a host of other issues would impose substantial and unnecessary discovery burdens and costs on SAS. ComplementSoft's proposed approach would defeat a primary purpose of the stay: to reduce the overall burden of litigation.

**I.     ComplementSoft Does Not Address Any Of The Relevant Factors For Evaluating A Stay, And Fails To Distinguish Any Of SAS's Cited Authorities Supporting A Stay.**

Each of the three factors considered in this District weigh in favor of a stay in this case:

(1) A stay will not result in undue prejudice or tactical disadvantage to ComplementSoft, particularly since ComplementSoft will fully participate in the IPR proceeding in the PTO, this litigation is in its early stages, and a stay will be of a finite duration because of the statutory IPR timing requirements.

(2) A stay will simplify the issues in the litigation since, at a minimum, SAS will be estopped from re-litigating in this Court the same invalidity issues that it raised or could have raised in the IPR.

(3) A stay will likely reduce the overall litigation burden. If all the patent claims are cancelled, the IPR will have eliminated the litigation in its entirety. And even if any amended claims survive the IPR, a stay will enable the Court and the parties to avoid costly and burdensome litigation regarding original patent claims that have been changed.

*See* SAS's Motion at 6-15 (Dkt. No. 38).

ComplementSoft's Opposition (Dkt. No. 40) does not even attempt to address any of the three relevant factors for evaluating a stay. ComplementSoft does **not** claim it will be unduly prejudiced if a stay is granted, does **not** deny that a stay will simplify the issues, and does **not** contest that a stay will reduce the overall litigation burdens here.

Nor does ComplementSoft address or even attempt to distinguish any of the authorities cited in SAS's Motion where a stay was granted pending IPR proceedings in the PTO, including the three cases in this District that have been stayed in the last six months,[1] or the numerous other district court decisions likewise staying parallel litigation.[2] Just as Judges Kennelly,

---

[1] *See* SAS's Motion at Exs. F, G and H: *Bergstrom, Inc., v. Idle Free Systems, Inc.*, No. 12−cv−50254 (N.D. Ill. Mar. 21, 2013); *ADC Technology, Inc. v. Kyocera Communications, Inc.*, No 1-12-cv-06418 (N.D. Ill. Dec. 13, 2012); *Clearlamp, LLC v. LKQ Corp.*, No. 12-cv-02533 (N.D. Ill. Oct. 18, 2012). In the *Clearlamp* case, since the filing of SAS's Motion, Judge Lefkow has now entered an order (Ex. AA) continuing the stay until the PTAB completes the IPR, with the parties directed to provide a status report when the IPR is complete.

[2] *See* cases collected in SAS's Motion at 4-7. Since the filing of SAS's Motion, yet another district court has stayed ongoing litigation after the filing of an IPR petition in the PTO. *Star Envirotech, Inc. v. Redline Detection*, LLC, No. 12-01861, (C.D. Cal. Apr. 3, 2013) ("The Court finds that IPR is a procedure that aids in [the] enforcement of patent rights while streamlining the issues in need of litigation.") (Ex. BB).

Lefkow, Kendall and the other district judges have exercised their discretion to stay ongoing litigation pending IPR proceedings in the PTO, this Court should similarly exercise its discretion to stay this litigation while the PTO makes an expedited review of the '936 patent.

## II. The Comprehensive Discovery Demanded By ComplementSoft Would Substantially Increase The Litigation Burden On SAS, Defeating A Primary Purpose Of A Stay.

ComplementSoft states that it opposes SAS's motion to stay only "in part," and that it "agrees to a stay of the proceedings" pending the IPR of the '936 patent by the PTO Board. Opposition at 1.  Upon inspection, however, ComplementSoft only consents to a stay if the Court will permit broad and comprehensive discovery of SAS to proceed in parallel with the PTO proceeding.  ComplementSoft cites no authority to support its proposed approach, however, which would effectively defeat a primary purpose of a stay:  to reduce the overall litigation burden.

As a condition for its "agreement" to a stay, ComplementSoft demands that SAS be required to search for and produce all documents relating to at least the following topics:

- "operation of the accused [SAS] products";
- "marketing of the accused [SAS] products";
- "cost and profits for the accused [SAS] products";
- "summary documents providing licensing fees received from [SAS] customers";
- "a copy of the [SAS] customer licenses;"
- "non-customer licenses relating to the accused [SAS] products"; and
- "evaluation of ComplementSoft's product."

Opposition p. 3.  ComplementSoft also demands that SAS search for and produce:

- "[a]ll documents supporting or relating to SAS's affirmative defenses"; and
- "[a]ll documents SAS intends to rely on at trial in this action."

*See* Request For Production Nos. 21-22 (attached as Ex. 5 to Hanft Decl., Dkt. No. 40-1). ComplementSoft additionally demands that, regardless of a stay, all "damages" discovery from SAS should proceed so ComplementSoft can "evaluate all aspects of this case for settlement purposes." *Id.* at 7. Still further, ComplementSoft seeks Court approval to pursue in this litigation "email discovery" requests (which have not yet even been served on SAS) while the IPR proceeds in parallel in the PTO. *Id.* at 8.

Arguing that there is currently an "un-level playing field," ComplementSoft contends that SAS should be required to undertake the significant cost and burden of searching for and producing all of these broad categories of documents and corresponding e-discovery because ComplementSoft, for its part, has already produced responsive documents. Opposition p. 3. But the current playing field is far from "un-level." SAS earlier and timely produced to ComplementSoft over 75,000 pages of documents as required under the Local Patent Rules, including documents sufficient to show the "operation and construction" of the accused SAS products,[3] and documents concerning the invalidating prior art identified to date by SAS.[4] ComplementSoft never once complained about the sufficiency of SAS's production of documents or its disclosures under the Local Patent Rules.

Moreover, any purported discovery imbalance is the natural result of the inherent positional differences between the parties – which only further demonstrates the appropriateness of a stay, rather than the two-track discovery approach advocated by ComplementSoft.

---

[3] SAS produced "documents sufficient to show the operation and construction of all aspects or elements of each accused apparatus, product, device, component, process, method or other instrumentality identified with specificity in the pleading of the party asserting patent infringement" as required by LPR 2.1(a), and supplemented accordingly under LPR 2.4.

[4] SAS produced "a copy of each item of prior art of which the party is aware that allegedly anticipates each asserted patent and its related claims or renders them obvious" as required by LPR 2.1(b), and supplemented accordingly under LPR 2.4.

ComplementSoft apparently has no ongoing business operations other than the enforcement and licensing of the '936 patent. Before choosing to file this suit, ComplementSoft likely had already collected, reviewed and prepared for production all documents relevant to this litigation. SAS, on the other hand, is an operating software company with ongoing commercial operations, including active research, development, marketing and sale of the two software products accused of infringing the '936 patent (SAS Enterprise Guide and SAS Data Integration Studio) as well as many other software products. As the Federal Circuit has explained, in patent cases like this, a non-practicing patent owner like ComplementSoft has

> the ability to impose disproportionate discovery costs on [the accused infringer] at least in part, because accused infringers often possess enormous amounts of potentially relevant documents that are ultimately collected and produced. The Federal Rules of Civil Procedure, as well as the local discovery rules and policies of a number of district courts, allow for liberal discovery, and it is not uncommon for an accused infringer to produce millions of pages of documents, collected from central repositories and numerous document custodians. Those discovery costs are generally paid by the producing party, increasing the nuisance value that an accused infringer would be willing to settle for in a patent infringement case.

*Eon-Net LP v. Flagstar Bancorp*, 653 F. 3d 1314, 1327 (Fed. Cir. 2011) (internal citations omitted).

Here, for SAS to respond to ComplementSoft's comprehensive discovery requests – beyond the 75,000+ pages already produced – would no doubt similarly require a search and collection from numerous document repositories and from numerous custodians among SAS's 10,000+ employees. This discovery would result in both significant cost to SAS and significant disruption to SAS's employees and its ongoing business operations. Rather than reducing the overall burden of litigation, as a stay is intended to do, ComplementSoft's proposal to proceed with comprehensive discovery in parallel with the PTO proceeding would lead to the opposite result. The case should be stayed in its entirety, including all discovery, pending the outcome of the IPR. *See United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F.Supp. 212, 219 (D. Del.

1991) (rejecting request that discovery proceed in parallel during pendency of stay while PTO conducted reexamination).

### III. The IPR Proceeding In The PTO Will Provide ComplementSoft With An Opportunity For Discovery.

ComplementSoft, moreover, fails to demonstrate why the parties should duplicate costly discovery efforts both in this Court and in the PTO. Indeed, discovery in IPR proceedings is expressly authorized by statute. 35 U.S.C. § 316(a)(5). The PTO has issued regulations governing the conduct of IPR discovery (37 C.F.R. § 42.51), and the PTO recognizes that "[d]iscovery is a tool to develop a fair record and to aid the [PTO Board] in assessing the credibility of witnesses." *See* Office Patent Trial Practice Guide at 48761, under heading "F. Discovery" (SAS Motion Ex. C).

Contrary to ComplementSoft's assertion that all discovery in the IPR "must be requested from and justified to the Board" (Opposition p. 7), the parties to an IPR are entitled as a matter of right to conduct "routine discovery" under 37 C.F.R. § 42.51(b)(1), and "Board authorization is not required to conduct routine discovery." Office Patent Trial Practice Guide at 48761. This "routine discovery," according to the PTO, "places the parties on a level playing field and streamlines the proceedings." *Id.* In addition to routine discovery, "additional discovery" such as "[t]he types of discovery available under the Federal Rules of Civil Procedure can be sought by the parties" via a motion to the PTO Board under 37 C.F.R. § 42.51(b)(2). Office Patent Trial Practice Guide at 48761. The parties may also "agree to additional discovery, between themselves." 37 C.F.R. § 42.51(b)(2). A party unsatisfied with the discovery produced during an IPR can file a motion asking the PTO Board to compel production of additional documents or testimony under 37 C.F.R. § 42.52.

The PTO also has anticipated and specifically addressed the conduct of e-discovery in IPR proceedings. *See* Office Patent Trial Practice Guide at 48762, under heading "7. E-Discovery" (SAS Motion Ex. C). The PTO has adopted a "Model Order Regarding E-Discovery" that is based on the Federal Circuit Advisory Committee's model e-discovery order for patent cases. *Id.* ComplementSoft's premature request for permission to seek e-discovery in this litigation can therefore be addressed in the IPR proceeding, to the extent such discovery is deemed necessary and appropriate.

Because any discovery relating to the patent validity issues that ComplementSoft legitimately may need during the IPR proceeding should be available under the PTO's discovery rules, there is no need to force SAS to undergo an extensive search and collection for documents on a host of other issues.[5] These documents will be of no use during the IPR, and they may never be needed in the litigation in this Court if, for example, all claims of the '936 patent are cancelled by the PTO in the IPR. Staying this litigation, including all discovery, will avoid a costly and potentially needless two-front battle. *See Arrivalstar S.S. v. Canadian Nat'l Ry. Co.*, No. 08 C 1086, 2008 WL 2940807, at *2 (N.D. Ill. July 25, 2008) ("[I]t makes more sense to

---

[5] ComplementSoft is careful to allege that "**several**"– but admittedly not **all** – "of [the] categories of documents [that it seeks] are relevant to the potential IPR proceedings and the ultimate resolution of this action." Opposition p. 4 (emphasis added). ComplementSoft cannot justify its request for full-blown fact discovery on "damages," for example, as being relevant to the PTO's review of the validity of the '936 patent. Nor can ComplementSoft allege that SAS documents relating to "cost and profits for the accused [SAS] products" are in any way relevant to the PTO's evaluation of the validity of ComplementSoft's '936 patent in the IPR.

ComplementSoft argues at length that SAS documents relating to SAS's alleged "evaluation of ComplementSoft's commercial product" called "ASAP" are purportedly relevant to "secondary considerations" of non-obviousness. Opposition pp. 4-6. But secondary considerations of non-obviousness can be attributed to a patented invention "only where the marketed product embodies the claimed features and is coextensive with them." *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008) (internal quotation marks omitted). Because ComplementSoft readily admits the marketed ASAP product did **not** include all of the required limitations of the '936 patent claims (Opposition at 5), any SAS documents relating to an evaluation of that product could not be used to show secondary considerations.

concentrate on proceedings before the subject matter experts than to require the parties to fight a two-front battle before both the PTO and the Court at this time.") (SAS Motion at Ex. P).

## IV. Conclusion

All three factors weigh in favor of a stay of this case – including all discovery – while the PTO completes the *inter partes* review of ComplementSoft's '936 patent. ComplementSoft will have access to discovery in the PTO trial proceeding, and to require SAS to undertake a substantial and costly document production effort in parallel would needlessly increase the litigation burden on SAS, and would defeat a primary purpose of the stay. This case should be stayed in its entirety.

Dated: April 24, 2013

Respectfully submitted,

s/ John A. Marlott
John A. Marlott (IL 06230613)
jamarlott@JonesDay.com
Thomas W. Ritchie (IL 06301954)
twritchie@jonesday.com
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL 60601.1692
Telephone: 1.312.782.3939
Facsimile: 1.312.782.8585

Counsel for Defendant
*SAS INSTITUTE, INC.*

## **INDEX OF EXHIBITS**

Exhibit AA — *Clearlamp, LLC v. LKQ Corp.*, No. 12-cv-02533 (N.D. Ill. Apr. 17, 2013)

Exhibit BB — *Star Envirotech, Inc. v. Redline Detection*, LLC, No. 12-01861, (C.D. Cal. Apr. 3, 2013)

## CERTIFICATE OF SERVICE

      I hereby certify that on April 24, 2013, I electronically filed a copy of the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

                                      /s/ John A. Marlott
                                      John A. Marlott

CHI-1887138v3

# Exhibit AA

## United States District Court, Northern District of Illinois

| **Name of Assigned Judge or Magistrate Judge** | Joan H. Lefkow | **Sitting Judge if Other than Assigned Judge** | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 2533 | **DATE** | 4/17/2013 |
| **CASE TITLE** | Clearlamp, LLC vs. LKQ Corporation | | |

**DOCKET ENTRY TEXT**

Joint motion to continue the stay pending *inter partes* review [46] is granted. Enter Order. The stay is to remain in force until the Patent Trial and Appeal Board (PTAB) completes its *inter partes* review of the patent-in-suit. The parties are to provide a status report within thirty (30) days following completion of the PTAB's review. Status hearing of 4/18/2013 is stricken and reset to 2/20/2014 at 8:30 a.m. In court Claim Construction Hearing of 6/28/2013 is stricken.

■ [ For further detail see separate order(s).]

Notices mailed by Judicial staff.

| | Courtroom Deputy Initials: | MD |
|---|---|---|

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CLEARLAMP, LLC,

Plaintiff,

v.

LKQ CORPORATION,

Defendant.

Case No.: 1:12-cv-02533

**JURY TRIAL DEMANDED**

## Order

The Court, having considered the Parties' Joint Motion to Continue the Stay Pending *Inter Partes* Review (Dkt. No. 46), and good cause appearing therefore, hereby GRANTS this Motion and ORDERS the stay to remain in force until the Patent Trial and Appeal Board (PTAB) completes its *inter partes* review of the patent-in-suit. The parties are further ORDERED to provide a status report within thirty (30) days following completion of the PTAB's review.

Further, the status conference set for April 18, 2013 at 8:30 a.m. is CANCELLED.

SO ORDERED.

_____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: April 17, 2013

# Exhibit BB

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | **SACV 12-01861 JGB (MLGx)** | Date | April 3, 2013 |
|---|---|---|---|
| Title | *Star Envirotech, Inc. v. Redline Detection, LLC; Kenneth A. Pieroni* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** Order (1) GRANTING Defendants' Motion to Stay (Doc. No. 20); (2) STRIKING Defendants' Motion to Dismiss (Doc. No. 9); and (3) VACATING the April 15, 2013 Hearing and Scheduling Conference (IN CHAMBERS)

Before the Court are (1) Defendants' Motion to Stay Litigation Pending Outcome of *Inter Partes Review* by the U.S. Patent and Trademark Office (Doc. No. 20); and (2) Defendants' Motion to Dismiss Patent Infringement Claim (Doc. No. 9). The Court finds Defendants' Motions appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to Defendants' Motions, the Court (1) GRANTS Defendants' Motion to Stay, and (2) STRIKES Defendants' Motion to Dismiss.

## I. BACKGROUND

Plaintiff Star Envirotech, Inc. filed its Complaint against Defendants Redline Detection, LLC and Kenneth A. Pieroni on October 25, 2012, asserting claims for patent infringement, false advertising, and unfair competition. (Compl. (Doc. No. 1).) Plaintiff alleges claims for infringement of Plaintiff's U.S. patent number 6,526,808 (entitled "Smoke and Clear Air Generating Machine for Detecting Presence and Location of Leaks in a Fluid System"). (Id. ¶ 13). Defendants filed a Motion to Dismiss Plaintiff's patent infringement claim on December 6, 2012 (Doc. No. 9), which was taken under submission before this action was transferred to this Court.

On January 7, 2013, Defendants filed their Petition for *Inter Partes* Review ("IPR") with the U.S. Patent and Trademark Office ("USPTO").[1]  (See Newboles Decl., Ex. A ("IPR Petition") (Doc. No. 22-1); Ex. 4 (USPTO's Notice of Filing Date of January 7, 2013 Accorded to Petition) (Doc. No. 26-2).)  On February 11, 2013, the parties jointly filed their scheduling conference report pursuant to Federal Rule of Civil Procedure 26(f), in which Defendants stated that they filed the IPR Petition and would be filing a motion to stay the litigation pending the IPR.  (Joint Scheduling Conference Rep. at 5 (Doc. No. 18).)

Defendants filed their Motion to Stay Litigation ("Motion") on February 15, 2013 (Doc. No. 20), attaching the Declaration of Matthew Newboles (Doc. No. 22).  Plaintiff opposed the Motion on February 25, 2013 (Doc. No. 25), and Defendants filed their Reply on March 4, 2013 (Doc. No. 26).

## II. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); Dependable Highway Express, Inc. v. Navigators Ins. Co., 498 F.3d 1095, 1066 (9th Cir. 2007).  Considering efficiency and fairness to the parties, the Court may "enter a stay of an action before it, pending resolution of independent proceedings which will bear on the case."  Levya v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863 (9th Cir. 1979).

"Any person at any time may file a request for reexamination by the [USPTO] of any claim of a patent on the basis of any prior art," 35 U.S.C. § 302, and "[a] petitioner in *an inter partes* review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). A district court has the discretion to stay judicial proceedings pending reexamination or review of a patent. See Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988); Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp., No. 12-0021-JST, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012).  Courts consider three factors in determining whether to grant a stay pending reexamination or review: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." Telemac Corp. v. Teledigital, Inc., 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006); Semiconductor Energy Lab. Co., 2012 WL 7170593**.**  There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." ASCII Corp. v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

---

[1] Effective September 16, 2012, the Leahy–Smith America Invents Act revised and streamlined the *inter partes* reexamination process and renamed it the *inter partes* review process. Pub.L. No. 112–29, § 314(a), 125 Stat. 284 (2011).

## III. DISCUSSION

To determine if a stay is appropriate, the Court assesses the factors of (1) the stage of the litigation; (2) whether a stay will simplify the issues; and (3) whether a stay would unduly prejudice the non-moving party.

Regarding the first factor, discovery is not complete and a trial date has is not set; there has not yet been a scheduling conference yet in this matter. Thus, the fact that this litigation is a very an early stage weighs in favor of granting the stay.

Regarding the second factor, Plaintiff argues that a stay would not meaningfully simplify this case, as there "is no reason for the Court to credit [Defendants'] prediction" that the USPTO will institute *inter partes* review of the patent and that Defendants will prevail in those proceedings." (Opp'n at 3-4.) Similar arguments have been rejected by courts in this District. "As this Court has previously noted, the amended standards for granting *inter partes* review probably results in an even higher likelihood than under the prior standard that the issues in this action will be simplified by the reexamination. See Inogen, Inc. v. Inova Labs, Inc., No. SACV 11–1692–JST (ANx), 2012 WL 4748803, at *3 (C.D. Cal. Mar. 20, 2012). On the other hand, if the USPTO rejects the *inter partes* requests, the stay will be relatively short. Therefore, this factor weighs in favor of a stay." Semiconductor Energy, 2012 WL 7170593, at *3. Plaintiff's claim for patent infringement is the core of the three claims in the Complaint. As Defendants would be barred from seeking this Court's review on any grounds it could have raised in the IPR, the Court finds that staying the case pending review would significantly simplify the issues.

Regarding the third and final factor, Plaintiff emphasizes the delay that might be caused from granting the stay. While it is true that any delay is prejudicial to a party filing a claim for patent infringement, the delay here is minimized, as the "delay caused by the new IPR procedure is significantly less than the delay caused by the old procedure." Id. Thus, the Court finds that Plaintiff has not shown that it would be unduly prejudiced by delay. Further, Plaintiff sets forth no argument that it would be any more prejudiced than any other plaintiff whose patent infringement claim is stayed pending IPR. While Plaintiff claims that its "business will be irreparably harmed by a stay," it provides no specific justification for this contention other than that it "needs to diligently enforce its patent rights to have a legitimate chance of success in the marketplace." (Opp'n at 10.) The Court finds that IPR is a procedure that aids in that enforcement of patent rights while streamlining the issues in need of litigation. Thus, the Court finds that this factor weighs in favor of granting the stay.

In light of the above considerations and the liberal policy of granting motions to stay litigation pending the outcome of USPTO proceedings, the Court GRANTS Defendants' Motion to Stay Pending *Inter Partes* Review.

As the outcome of the IPR, including the USPTO's potential rejection of Defendants' Petition, will affect the Court's analysis of Plaintiff's claim for patent infringement and will likely

require new briefing, the Court finds that allowing the re-filing and re-briefing of the Motion to Dismiss at the conclusion of the IPR to be the most efficient course. Thus, the Court STRIKES Defendants' pending Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, the Court
1. GRANTS Defendants' Motion to Stay. This action is STAYED pending final exhaustion of all pending *Inter Partes* Review proceedings, including any appeals. The parties shall file a joint status report within 14 days after the conclusion of the reviews informing the Court of the USPTO's findings and, if applicable, requesting that the Court lift the stay;
2. STRIKES Defendants' Motion to Dismiss; and
3. VACATES the April 15, 2013 hearing and scheduling conference.

**IT IS SO ORDERED.**